UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | § | |
| | § | |
| v. | § | CRIMINAL NO.: H-4-21-cr-103-S4 |
| | § | |
| MOHAMED M. MOKBEL, | § | JUDGE LEE H. ROSENTHAL |
| | § | |
| Defendant. | § | |

## THE UNITED STATES OF AMERICA'S OPPOSITION TO THE INTRODUCTION OF DEFENDANT'S PROFFERED EXHIBITS 701 AND 702

For the reasons set forth herein, as well as those provided during the pretrial conferences, Defendant's Exhibits 701 and 702 are inadmissible.

In *Rambus, Inc. v. Infineon Technologies AG,* 222 F.R.D. 101 (E.D. Va. 2004), that Court explained that interim decisions, such as the one at issue here, are inadmissible under Fed. R. Evid. 803(8) because:

> [An][i]nitial Decision from the FTC proceedings . . . currently being reviewed by the full Commission; and, under the FTC's rules, on appeal, the full Commission may "adopt, modify, or set aside the findings, conclusions, and the rule or order contained in the initial decision." . . . Thus, the Initial Decision is not, under the FTC's own rules, a final determination of the FTC's findings. Consequently, considering the nature of the executive branch proceeding, . . . it appears that the lack of finality and the presence of an ongoing appeal foreclose a determination that the Initial Decision constitutes an agency's "factual finding." And, under Fed. R. Evid. 803(8)(C), only an FTC factual finding would be admissible. . . . *See Plemer v. Parsons–Gilbane,* 713 F.2d 1127, 1140 (5th Cir.1983) ("If the document is not sufficiently final, it may not constitute a 'factual finding' ... under the exception to the hearsay rule in Fed.R.Evid. 803(8)(C)."). . . . Second, the fact that the Initial Report is subject to *de novo* review and thus is preliminary in nature also casts doubt upon its "trustworthiness" under Fed. R. Evid. 803(8)(C). *See Plemer v. Parsons–Gilbane,* 713 F.2d 1127, 1140 (5th Cir.1983) (noting that if administrative report is not final, it "*may be considered untrustworthy*" under 803(8)(C) (emphasis added)); *see also Coleman v. Home Depot, Inc.,* 306 F.3d 1333, 1342 n. 4 (3rd Cir.2002) (stating that, in determining trustworthiness under Fed.R.Evid. 803(8)(C), courts may consider, *inter alia,* " '[t]he finality of the agency findings, *i.e.,* the state of the proceedings at which the findings were made (whether they are subject to subsequent proceedings or *de*

1

*novo* review), and the likelihood of modification or reversal' ") (quoting *Zenith Radio Corp. v. Matsushita Elec. Indus. Co.,* 505 F.Supp. 1125, 1147 (E.D.Pa.1980)); *Barlow v. Conn.,* 319 F.Supp.2d 250, 258 (D.Conn.2004) (excluding report because of its preliminary nature). . . . Third, the "trustworthiness" of the Initial Decision is significantly undercut by the absence from the FTC proceedings of the party against whom the ALJ's report is sought to be here admitted. . . . [T]hat fact militates against a finding that the Initial Decision is "trustworthy" as Fed. R. Evid. 803(8)(C) uses that term. . . . In sum, Rule 803(8)(C) does not serve to render the Initial Decision admissible. In light of the nonfinal and appealable nature of the Initial Decision, the Initial Decision is not the type of document subject to admission under Rule 803(8)(C). Moreover, even if the Initial Decision is a "factual finding" of the type generally admissible under Rule 803(8)(C), the Court finds that the Initial Decision lacks the indicia of trustworthiness necessary for its admission under Rule 803(8)(C).

That Court further explained that such evidence is also inadmissible under Fed. R. Evid. 403 because:

In this case, even though the Initial Report is relevant to several issues in this litigation, it must be excluded under Rule 403 because its probative value is substantially outweighed by the danger of unfair prejudice and its tendency to mislead the jury, confuse the issues, and waste time. *See City of N.Y. v. Pullman, Inc.,* 662 F.2d 910, 915 (2nd Cir.1981) ("Even if the report was admissible [under Fed.R.Evid. 803(8)(C)] ... the district court did not abuse its discretion in holding, in the alternative, that the report should be excluded under Fed.R.Evid. 403 because the likelihood that it would confuse the jury and protract the proceedings outweighed its probative value."). First, the jury, when confronted with the Initial Decision, likely would give undue weight to the findings of the ALJ. *See Martin v. Cavalier Hotel Corp.,* 48 F.3d 1343, 1358 (4th Cir.1995) (upholding trial court's decision under Fed.R.Evid. 403 to exclude report of state agency because "jury would have placed undue weight on such evidence"); . . . *accord Williams v. Nashville Network,* 132 F.3d 1123, 1129 (6th Cir.1997) ("A strong argument can made that a jury would attach undue weight to this ... agency determination."). Similarly, the jurors' ability to reach their own determinations respecting the facts at issue in this case would be undermined by the admission of the Initial Decision. *United States v. MacDonald,* 688 F.2d 224, 230 (4th Cir.1982) (upholding trial court's decision under Fed.R.Evid. 403 to exclude executive branch investigator's findings and conclusions because report "tend[ed] to undermine the exclusive province of the jury"); *see also* Steven P. Grossman & Stephen J. Shapiro, *The Admission of Government Fact Findings Under Federal Rule of Evidence 803(8)(C): Limiting the Dangers of Unreliable Hearsay,* 38 U. Kan. L.Rev. 767, 778–779 (1990) ( "Jurors learning that a presumably objective public official has reached a certain conclusion after hearing evidence similar to what they have heard may have difficulty reaching an opposite conclusion. Further, the jury is likely to deliberate on the correctness of the previous fact finding, rather

2

> than retaining the open-minded, first impression approach to the issues our system prefers.").
>
> \* \* \*
>
> In addition, the admission of the Initial Decision would create confusion of the issues and would create a serious risk of misleading the jury. For instance, the jury here will be required to decide Infineon's monopolization counterclaim. . . . [I]f the Initial Decision were admitted here, [the opposing party] would be required to address issues not presented by its claim or its evidence. And, following that presentation, it would be necessary to tell the jury that [the opposing party's] evidence on those issues is admissible only to prove that the Initial Decision is unreliable, not to prove Infineon's substantive claims. One can hardly envision a more confusing and misleading scenario. Nor can one conjure a more wasteful exercise. The evidence . . . is certainly not simple, and the instructions, even without introduction of the Initial Decision, will be quite complex. It would be utterly wasteful, even if manageable at all, to overlay that evidence and those instructions with, as [the opposing party] correctly asserts, a series of mini-trials respecting the reliability of the findings in the Initial Decision. Nor is it possible . . . to extract specific findings from the Initial Decision and tender them to the jury. To begin, the factors that precipitated the "untrust-worthiness" findings in the Rule 803(8)(C) analysis simply foreclose such an approach. Moreover, it is difficult to imagine parsing the Initial Decision for admissible sections without creating a convoluted and disjointed end-product. . . . The Court will not countenance the prejudice to the fair adjudication of this action that admission of the Initial Decision undoubtedly would present.. . . For the forgoing reasons, the Court finds that the probative value of admitting the Initial Decision is substantially outweighed by its prejudicial effects and its tendency to mislead the jury, confuse the issues, and waste time. Thus, without regard to its admissibility under Rule 803(8)(C), the Initial Decision will be excluded under Fed.R.Evid. 403.

*Id.* at 108-111.

Similarly, in *City of New York v. Pullman, Inc.* 662 F.2d 910 (2d Cir. 1981), the Second Circuit explained that:

> By its own terms, the . . . report was not the final report or finding of a government agency within the meaning of the Rule, but was an "interim" staff report in the form of a recommendation to the Administrator. As an interim report subject to revision and review, the report did not satisfy the express requirement of the Rule that the proffered evidence must constitute the "findings" of an agency or official. . . . [W]hile the . . . report included broad conclusory language which might have been used to advantage at trial, as appellants claim, a close reading of the report makes it evident that the broad language did not embody the findings of an agency, but the tentative results of an incomplete staff investigation. We hold that it was properly excluded. . . . It also is significant that the . . . Moreover, the "findings" set forth in the report were not based on independent testing . . . or tests which had been verified

3

> . . . or even test results which were the subject of formal administrative hearings. Instead, the . . . staff relied upon "hand-outs" from the parties to this action which consisted largely of data derived from tests conducted by appellants themselves. This lack of formal verification or procedure itself was sufficient to justify the exclusion of the report as untrustworthy. . . . Even if the report was admissible, however, the district court did not abuse its discretion in holding, in the alternative, that the report should be excluded under Fed.R.Evid. 403 because the likelihood that it would confuse the jury and protract the proceedings outweighed its probative value. . . . First, the report was prepared for very different purposes that those for which it was offered at trial. . . . Second, as a so-called government report which in fact was incomplete and based largely on hearsay, the report would have been presented to the jury in "an aura of special reliability and trustworthiness" which would not have been commensurate with its actual reliability . . . Third, the admission of the report would have been likely to protract an already prolonged trial with an inquiry into collateral issues regarding the accuracy of the report and the methods used in its compilation.

*Id.* at 914-15.

Similarly here, Defendant's attempt to introduce an "interim" report prepared three years after the indictment, that includes far more than mere factual findings, must fail. Defendant's attempt to introduce this evidence suffers all of the failing identified in the abovementioned two opinions. Moreover, not only does is suffer from the lack of trustworthiness by being an interim report, but Defendant's do not explain which portions are factual findings for a legally authorized investigation, which is what Fed. R. Evid. 803(8)(A)(iii) permits,[1] as opposed to opinions and conclusions.

In addition, it is noteworthy that the FTC interim report was generated in 2024 and does not mentioned Defendant or his acts at all. Thus, absent a claim of being clairvoyant, for Defendant to somehow claim that he relied on documents created three years after his indictment should be rejected.

---

[1] It is noted that Defendant is not seeking admission under Fed. R. Evid. 803(a)(ii), but only Fed. R. Evid. 803(8)(A)(iii). Therefore, the former will not be addressed herein.

Moreover, the documents at issue are unrelated to the case before this Court. Defendant is charged with paying kickbacks for Medicare beneficiary information, for bribing an official, for making false statements about the owners of his pharmacies and whether they were registered as mail order as opposed to retail, for creating counterfeit checks and money orders in response to audits, for lying to Medicare beneficiaries as to what supplies they would receive and for what applications the creams could be used, and for engaging in a telemarketing scheme that manipulated the reimbursement rates of certain creams and pills while using diabetic testing supplies as a red herring to dupe Medicare beneficiaries and their doctors. Nothing in the proffered exhibits is relevant to those acts nor to they offer any type of defense to his actions. As such, they are irrelevant to the case before this Court and should be deemed inadmissible.

As for Defendant's reliance on *United States v. Gluk,* 831 F.3d 608 (5th Cir. 2016), it *is entirely misplaced. In that case, the two defendants, as opposed to two other individuals, were accused of committing the channel stuffing corporate fraud scheme based on their roles in two corporations. However, the SEC report at issue in that case specifically indicated that the two defendants were not involved in the "wrongful conduct." In other words, the SEC report in that case was directly relevant and related to the two specific defendants and the specific crimes which which they were charged. *See id.* at 612. By way of contrast, the reports at issue in this case have nothing whatsoever to do with Defendant and do not make reference to him, much less allege that he engaged in no wrongful conduct. Quite simply, *Gluk* is inapposite to the issues before this Court.

As for *Cherry Hill Vineyards, LLC v. Hudgins,* 488 F. Supp. 2d 601 (W.D. Ky. 2006), that case dealt with numerous evidentiary objections by both parties at the cross-motion for summary judgment stage of the proceeding. Among the evidentiary objections were those to an FTC Staff

report. That Court explained that the documents at issue went to the weight of the evidence, but not to "genuine issue[s] of material fact," which was the basis of the summary judgment motion being decided in that decision. *Id.* at 611. Here, quite the opposite is true. This is a criminal trial with no summary judgment in which the admissibility is questioned and to which the document at issue is relevant (as opposed to *Cherry Hill*, in which the document at issue was not relevant to the issues necessary to resolve summary judgment motions).

Regarding Defendant's claim that Congressional subcommittee reports are admissible, it is troubling that he relies on *Gubarev v. BuzzFeed, Inc.,* 340 F. Supp. 3d 1304 (S.D. Fla. 2018), for three reasons. First, the footnote he cites specifically states that, in this summary judgment decision for the defendants, "the plaintiffs to not otherwise dispute these facts." Thus, because the facts in the underlying documents were undisputed at the time, the admissibility of the congressional reports were of no relevance to the decision. Second, in the cited footnote, that case cited *Schaghticoke Tribal Nation v. Kempthorne*, 587 F.Supp.2d 389, 397 (D. Conn. 2008), aff'd, 587 F.3d 132 (2d Cir. 2009); 2 McCormick On Evid. § 229.1 (7th ed.) as a basis for admissibility under Fed. R. Evid. 803(8). However, a review of the cited page in *Schaghticoke,* much less the *Schaghticoke* decision itself, reveals that rule of evidence was never discussed. Instead it discussed Fed. R. Evid. 902 and other portions of Fed. R. Evid. 803. Third, a review of the subsequent decision by that Court explains the enormous dangers of such reliance. *See Gubarev v. BuzzFeed, Inc.,* No. 17060426, 2020 WL 8254486 (S.D. Fla. Dec. 17, 2020). Indeed, it is noteworthy that case had to be remanded so as to consider future administrative reports that contradicted those relied upon in the initial report and found to be admissible. *See id.* Moreover, based on subsequent events, the mere fact that Defendant relies on the documents at issue in

6

*Gubarev* only further establishes the lack of trustworthiness necessary to satisfy the elements of Fed. R. Evid, 803(8)(B). *See generally* https://www.justice.gov/storage/120919-examination.pdf.

In sum, the Court should rule that Defendant's Exhibits 701 and 702 are inadmissible.

Date:   September 30, 2024          Respectfully submitted,

ALAMDAR S. HAMDANI
United States Attorney, Southern District of Texas

By:     *s/ Adam Laurence Goldman*
        Adam Laurence Goldman
        Kathryn Olson
        Assistant United States Attorneys
        1000 Louisiana Street, Suite 2300
        Houston, TX 77002
        Phone: (713) 567- 9534
        E-mail: adam.goldman2@usdoj.gov

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on this 30th day of September, 2024, I electronically filed this document with the Clerk of Court using CM/ECF, to which opposing counsels are members:

*s/ Adam Laurence Goldman*
Adam Laurence Goldman
Assistant United States Attorney