IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | § | |
| | § | |
| v. | § | No. 4:21-cr-103 |
| | § | |
| MOHAMED M. MOKBEL | § | |

### REPLY IN SUPPORT OF DEFENDANT MOKBEL'S RENEWED MOTION FOR JUDGMENT OF ACQUITTAL

The government's response (Doc. 346) ignores the distinction between federal *payments* and federal *benefits*. Section 666 requires proof that the entity at issue--here, Optum--received more than $10,000 annually in federal *benefits*. The government points to no evidence that Optum received anything other than contractual payments from insurers for administering the insurers' prescription drug plans and payments from the insurers to pharmacies for which Optum served as a conduit. Neither the contractual payments nor the payments passed through to the pharmacies constituted "benefits" to Optum. This is especially clear from 18 U.S.C. § 666(c), which excludes all "bona fide . . . fees, or other compensation paid, or expenses paid or reimbursed, in the usual course of business."

The government cites no case in which a PBM, or even an entity functionally equivalent to a PBM, has been held to receive federal "benefits." Relying on *Fischer v. United States*, 529 U.S. 667 (2000), it notes that "Medicare payments are 'benefits,' as the term is used in its ordinary sense and as it is intended in the statute.'" Doc. 346 at 6 (quoting *Fischer*, 529 U.S. at 677). That is certainly true with respect to the patients, pharmacies, doctors, and hospitals who receive those payments. As *Fischer* suggests in dicta, an insurer

such as Blue Cross/Blue Shield may well receive "benefits," since it receives payment from Medicare that goes beyond mere contractual compensation. But *Fischer* did not involve the unique structure of Medicare Part D, and it did not consider PBMs, which--according to the evidence at trial--provide administrative services to private insurers participating in the Part D program in return for a fee.

The government tries to equate a PBM such as Optum with the hospital found to have received "benefits" in *Fischer*. *E.g.*, Doc. 346 at 7. But there is a fundamental difference between the two. As *Fischer* observed, "[t]he payments [to the hospital] are made not simply to reimburse for treatment of qualifying patients but to assist the hospital in making available and maintaining a certain level and quality of medical care, all in the interest of both the hospital and the greater community." *Fischer*, 529 U.S. at 679-80. The trial evidence does not permit a similar conclusion about Optum. Nothing in the trial record suggests that Optum provides "medical care," or that either the contractual payments it receives from insurers or the funds that flow through it to pay the pharmacies "assist the [PBM] in making available and maintaining a certain level and quality of medical care." The contractual payments from insurers simply compensate Optum for administrative services it provides, and the funds for the pharmacies, to the extent Optum retains any portion of them, constitute "reimbursement" for "expenses" (prior payments to pharmacies) incurred "in the usual course of business." 18 U.S.C. § 666(c).

*Fischer* summarizes its analysis as follows: "To determine whether an organization participating in a federal assistance program receives 'benefits,' an examination must be undertaken of the program's structure, operation, and purpose. The inquiry should examine

the conditions under which the organization receives the federal payments. The answer could depend, as it does here, on whether the recipient's own operations are one of the reasons for maintaining the program. Health care organizations participating in the Medicare program satisfy this standard." *Fischer*, 529 U.S. at 681. Unlike hospitals, whose "own operations are one of the reasons for maintaining the [Medicare] program," there is no evidence in the record that a PBM's "own operations" are one of the reasons for maintaining Medicare. The Medicare program could not function without hospitals. But there is no evidence that it could not operate without PBMs.

The government appears to maintain that the exclusions in § 666(c) do not apply to the $10,000 annual federal benefits element. Doc. 346 at 8. It suggests, in other words, that *United States v. Chafin*, 808 F.3d 1263, 1270-71 (11th Cir. 2015), which holds that § 666(c) *does* apply to the benefits element, is inconsistent with Fifth Circuit law.

But the Fifth Circuit case on which the government principally relies--*United States v. Marmolejo*, 89 F.3d 1185, 1190 n.5 (5th Cir. 1996), *aff'd on other grounds*, 522 U.S. 52 (1997)--was decided before *Fischer*. In *Fischer*, the petitioner relied on § 666(c) in arguing that the hospital did not receive "benefits" under § 666(b). *See Fischer*, 529 U.S. at 678-80. If the government's position here were correct, the Court would have rejected this argument out of hand on the ground that § 666(c) does not apply to the "benefits" element. Instead, the Court acknowledged that § 666(c) "bears on the analysis" of the "benefits" issue, 529 U.S. at 678, and it considered § 666(c) in detail before concluding that payments to the hospital did constitute "benefits," *see id*. at 678-80. The Court left no doubt, in other words, that the "benefits" element must be read together with § 666(c). After *Fischer*, the

3

Fifth Circuit's footnote 5 in *Marmolejo* cannot be understood to bar application of § 666(c) to the "benefits" element.[1]

Perhaps through expert testimony the government could have presented evidence that federal payments (if any) to PBMs such as Optum constitute "benefits" under § 666(b). Maybe something in the PBM reports offered by the defense would have helped establish that element. But the government elected to proceed without experts, and it fought hard and successfully to exclude the PBM reports. It must accept the consequences of those decisions. *See United States v. Bravo-Fernandez*, 913 F.3d 244, 247-50 (1st Cir. 2019).

---

[1] The other Fifth Circuit case the government cites--*United States v. Brown*, 727 F.3d 329, 336-37 (5th Cir. 2013), does not even cite § 666(c) and says nothing about that statute.

## CONCLUSION

For the foregoing reasons, and for the reasons in Mokbel's initial motion, the Court should grant judgment of acquittal.

Respectfully submitted,

*/s/ Charles Flood*
Charles Flood
Flood & Flood Law Office
914 Preston at Main, Suite 800
Houston, TX 77002
(713) 223-8877; Fax (713) 223-8877
charles@floodandflood.com
Texas Bar License# 00798178
Fed I.D. 22508

*/s/ John D. Cline*
John D. Cline
Law Office of John D. Cline
600 Stewart Street, Suite 400
Seattle, WA 98101
(360) 320-6435
cline@johndclinelaw.com
California Bar License# 237759

*Counsel for the Defendant Mohamed Mokbel*

## **CERTIFICATE OF SERVICE**

I hereby certify that a true and correct copy of the foregoing instrument was served on this 2nd day of December 2024 to the counsel of record, via ECF.

*/s/ Charles Flood*
Charles Flood