UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA § | |
| § | |
| v. § | CRIMINAL NO. 4:21-cr-103 |
| § | |
| MOHAMED M. MOKBEL § | |

### UNITED STATES' REPLY TO
### DEFENDANT'S OPPOSITION TO FORFEITURE MOTIONS

The United States responds to Defendant Mohamed M. Mokbel's Opposition (Doc. 347) to (a) the Government's Motion for Preliminary Order of Forfeiture (Doc. 343); and (b) the Government's Motion for Money Judgment (Doc. 344).

#### I.   The Proposed Money Judgment Complies with *Honeycutt*

Imposition of a $201,272,902 money judgment against the Defendant is fully consistent with the *Honeycutt* opinion. The U.S. Supreme Court determined that a defendant may not be held "jointly and severally liable for property that his co-conspirator derived from the crime but that the defendant himself did not acquire." *Honeycutt v. United States*, 581 U.S. 443, 445 (2017). In the *Honeycutt* case, the defendant co-conspirator appealed the money judgment because he was merely an employee who had not acquired any tainted property. The court noted that he had "no ownership interest in his brother's store and did not personally benefit" from the store's illegal sales. *Id.* at 454.

Here, the Defendant was clearly the mastermind who himself acquired and controlled the gross proceeds from the health care fraud that he conducted through his pharmacy businesses.

A. A Money Judgment Includes Proceeds a Defendant Controlled

The Defendant argues that he cannot be held responsible for money that was paid to his limited liability companies, the very companies he created in order to effectuate his fraud. The law says otherwise.

A defendant who "effectively controlled the proceeds …, as he was able to transfer the funds to shell companies and use the funds for personal expenses," has "acquired" the funds for purposes of *Honeycutt*. *United States v. Bergstein*, 788 Fed. App'x 742, 748 (2d Cir. 2019). The First Circuit summarized the post-*Honeycutt* law as follows:

> [W]e agree with many of our sister courts' conclusions that **where a defendant controlled the full proceeds as a result of the crime, Honeycutt does not preclude him from being held liable for the value of such funds.** See, e.g., Tanner, 942 F.3d [60, 67-68 (2d Cir. 2019)]; United States v. Potts, 765 F. App'x 638, 640 (3d Cir. 2019) (declining to apply Honeycutt where the defendant did "not rebut[ ] the record evidence showing that he, a co-owner of the organization, received ... proceeds as a result of his participation in the organization"); United States v. Bane, 948 F.3d 1290, 1297-98 (11th Cir. 2020) (**distinguishing the case from Honeycutt because of the defendant's position as "owner and operator" of companies involved in the enterprise**); United States v. Bangiyev, 359 F. Supp. 3d 435, 440 (E.D. Va.) (concluding that a defendant "at the center of" the conspiracy could be held jointly and severally liable for the forfeiture because Honeycutt does not apply "where the defendant held a position of control in the criminal operation"), aff'd, 771 F. App'x 328 (4th Cir. 2019).

*Saccoccia v. United States*, 955 F.3d 171, 175 (1st Cir. 2020) (emphasis added). A money judgment for the amount of funds the Defendant controlled is thus appropriate.

B. The Defendant Acquired and Controlled the Fraud Proceeds

As a result of his health care fraud and conspiracy, Defendant Mokbel acquired gross proceeds of $201,272,902 within the meaning of *Honeycutt*. As shown by the trial

2

evidence, the Defendant controlled and directed the fraudulent enterprise, including the pharmacies and their bank accounts; and he treated the pharmacy bank accounts as his personal piggybank, using the funds freely as desired.

Financial records show that from 2014 to 2021, the Defendant made $32,184,827 in withdrawals and transfers to his own personal accounts from pharmacy business accounts. GEX 47 ("Payments to Mohamad M. Mokbel's Personal Account and/or Withdrawal Slips Signed by Mohamed M. Mokbel from 4M and the 4M Pharmacies"). In addition, he directed that money for his personal benefit be transferred directly from pharmacy bank accounts, including more than $7.6 million to casinos; more than $200,000 to his child's mother, MB; more than $128,000 for payments on his Bentley; and more than $108,000 in payments for his Ferrari. *See* GEX 31-45, Financial Summaries of 4M and the 4M Pharmacies.

The evidence shows that the Defendant had full control of both the pharmacies and their bank accounts, and he should be held responsible for the $201,272,902 he obtained through his fraudulent enterprise.

### C. *Honeycutt* did not Address Specific Property

The Defendant states that Mokbel "did not 'actually acquire[]' the funds the government seeks to forfeit from the 4M Pharmaceuticals, LLC bank account." Opposition at p.3. The Defendant appears to be conflating the concept of a personal money judgment (in the amount of the gross proceeds acquired by the Defendant) with the direct forfeiture of specific traceable property, which has a separate analytical framework. *Honeycutt* addressed only joint and several liability for a money judgment.

The $3,143,473.97 seized from a 4M bank account is subject to forfeiture in this criminal case (and would be subject to forfeiture in a separate civil forfeiture case brought against it directly) because that money constitutes health care fraud proceeds and is thus subject to statutory forfeiture under 18 U.S.C. §982(a)(7). A district court enters a Preliminary Order of Forfeiture "without regard to any third party's interest in the property. Determining whether a third party has such an interest must be deferred until any third party files a claim in an ancillary proceeding under Rule 32.2(c)." Federal Rule of Criminal Procedure 32.2(b)(2)(A). The Court determines whether the seized funds constitute proceeds, and a defendant cannot simply assert that the funds are not forfeitable because they "belong" to a third party. *See also* Rule 32.2(c)(2) ("The defendant may not object to the entry of the final order on the ground that the property belongs, in whole or in part, to a codefendant or third party").

Once a Preliminary Order of Forfeiture is issued, third parties have the opportunity on their own behalf to file petitions claiming an interest in the seized funds. The entity 4M Pharmaceuticals LLC could file such a claim in an ancillary proceeding (although—aside from issues such as alter ego—it would lose because it cannot meet the requirements of 21 U.S.C. §853(n)(6)[1] and show a legitimate interest in fraud proceeds).

## II.     Pervasive Fraud and Proceeds of Scheme and Conspiracy

The Defendant's argument that the fraud was not pervasive can be rejected out of hand based on the evidence. Furthermore, the Defendant's attempt to restrict forfeiture to

---

[1] The forfeiture procedures of 21 U.S.C. §853 are incorporated by 18 U.S.C. §982(b)(1).

"the amounts Mokbel personally obtained from prescription drugs provided to the five patients who testified" is unavailing. Opposition at p.4. The law is clear that the proceeds of a defendant's *entire scheme or conspiracy*, not just of the particular executions charged, are subject to forfeiture by a preponderance of the evidence. *See United States v. Venturella,* 585 F.3d 1013, 1015 (7th Cir. 2009) (forfeiture in a mail fraud case "is not limited to the amount of the particular mailing but extends to the entire scheme"); *United States v. Lo*, 839 F.3d 777, 793 (9th Cir. 2016). The Defendant was convicted of conspiracy and a scheme to defraud, and all of the gross proceeds of that health care fraud are subject to forfeiture.

### III.  Money Judgment can be Enforced by Forfeiting Substitute Property

The Defendant concedes that Fifth Circuit case law forecloses his argument that the Court lacks authority to issue money judgments, so the Government does not argue that point. The Government does, however, seek a finding as a matter of convenience that the evidence establishes that one of more of the 21 U.S.C. § 853(p) factors is satisfied, such that the Government can forfeit substitute property towards satisfaction of the money judgment.

Section 853(p)(2) provides that "the court shall order the forfeiture of any other property of the defendant" if any of the tainted property:

> as a result of any act or omission of the defendant—
> **(A)** cannot be located upon the exercise of due diligence;
> **(B)** has been transferred or sold to, or deposited with, a third party;
> **(C)** has been placed beyond the jurisdiction of the court;
> **(D)** has been substantially diminished in value; or

> **(E)** has been commingled with other property which cannot be divided without difficulty.

21 U.S.C. § 853(p)(1). A money judgment can be satisfied by the forfeiture of a defendant's untainted ("substitute") property if one or more of the conditions listed in 21 U.S.C. §853(p) applies. "Only if the Government can prove that one of these five conditions was caused by the defendant may it seize 'any other property of the defendant, up to the value of' the tainted property," which is represented by the money judgment amount. *Honeycutt*, 581 U.S. at 452.

The Government strongly disagrees with the Defendant that Section 853(p) may be a "precondition" to imposing a money judgment. Rather, a Section 853(p) finding is required at the time of enforcement, when the Government has identified substitute property that it wishes to forfeit in partial satisfaction of a money judgment.

The evidence has shown that one of more of those conditions exists, including that the Defendant transferred funds beyond the jurisdiction of the court, and that he transferred funds to third parties, including straw pharmacy owners and co-conspirators. The Defendant spent over $12 million in kickback payments to Gregory Rispler. GEX 31. The Defendant transferred $1.3 million to Pyramids Telecommunications, his Egyptian call center operation. GEX 31, 42. But the main factor is the first one: the evidence establishes that the Defendant spent millions in tainted property (health care fraud proceeds generated by his fraudulent pharmacies) on gambling and travel and other expenses, and such funds cannot be located upon the exercise of due diligence because they were already spent. *See*

6

GEX 31-45, 47. Obtaining a Section 853(p) finding at this time, while the evidence is fresh in the Court's mind, seems to be most efficient.

The Government requests that the Court make a Section 853(p) finding so the Government can use that evidentiary finding if it later seeks to forfeit substitute assets. The Government has added the following sentence to the previously submitted proposed order imposing money judgment: "The Court also finds from the evidence that as a result of an act of omission of the Defendant, one of more of the conditions listed in 21 U.S.C. §853(p) is present."

### IV. Conclusion

The United States re-urges entry of a Preliminary Order of Forfeiture for the three specific properties; and entry of an Order Imposing Money Judgment of $201,272,902. A revised proposed order for the money judgment is attached for the Court's consideration.

    Respectfully submitted,

    ALAMDAR S. HAMDANI
    UNITED STATES ATTORNEY

By:   /s/ Kristine E. Rollinson
    Kristine E. Rollinson
    Kathryn Olson
    Adam Goldman
    Assistant United States Attorneys
    1000 Louisiana Street, Suite 2300
    Houston, Texas 77002
    Phone: (713) 567-9000
    Email: Kristine.Rollinson@usdoj.gov

## CERTIFICATE OF SERVICE

    I hereby certify that on December 10, 2024, I electronically filed the foregoing with the Clerk of Court using the CM/ECF system, causing service on all attorneys of record.

                                          */s/ Kristine E. Rollinson*
                                          Kristine E. Rollinson