UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | § § | |
| v. | § § | CRIMINAL NO.: H-4-21-cr-103-S4 |
| MOHAMED M. MOKBEL, | § § | JUDGE LEE H. ROSENTHAL |
| Defendant. | § § | |

**POST-TRIAL MEMORANDUM CONCERNING SUPREME COURT ORAL ARGUMENT IN *KOUSISIS v. UNITED STATES***

The United States submits this memorandum to:

(1) advise this Court of the oral argument recently held before the Supreme Court in *Kousisis* v. *United States*, No. 23-909, which involved, *inter alia* the definition of materiality in contract-fraud prosecutions under the federal mail- and wire-fraud statutes;

(2) confess that the United States erred in one of its arguments opposing Defendant's mid-trial motion to replace the Fifth Circuit pattern jury instruction on materiality with an instruction drafted by defense counsel; and

(3) affirm that this Court nevertheless acted properly in denying Defendant's request to jettison the pattern jury instruction in favor of his proposed materiality instruction.

**I.     This Court's use of the Fifth Circuit pattern jury instruction on materiality**

The Fourth Superseding Indictment charged Defendant with a 7-year-long scheme to commit healthcare fraud, mail fraud, and crimes related to kickbacks through the operation of 14 pharmacies in Texas, Florida, and California ("the 4M Pharmacies") that Defendant owned and operated through a management company. (Docket Entry No. 226). Defendant was charged with five counts of healthcare fraud (in violation of 18 U.S.C. § 1347), one count of conspiracy to commit healthcare fraud and mail fraud (in violation of 18 U.S.C. § 1349), one count of conspiracy to pay kickbacks/purchasing Medicare beneficiaries' information (in violation of 18 U.S.C. § 371), seven counts of engaging in monetary transactions in property derived from a specified unlawful

1

activity (in violation of 18 U.S.C. § 1957), one count of conspiracy to commit bribery concerning programs receiving federal finds (in violation of 18 U.S.C. § 371), and one count of bribery concerning programs receiving federal funds (in violation of 18 U.S.C. § 666). *Id*. Defendant and his co-conspirators used a complex telemarketing scheme to defraud Medicare, Medicaid, and private insurers by submitting false and fraudulent claims for expensive topical creams and omega-3 pills. *Id*. These prescriptions were often medically unnecessary, not provided, based on illegally purchased Medicare beneficiary identification numbers and/or kickbacks, and/or based on false representations to prescribers, patients, and/or the PBMs. Additionally, copayments were not properly collected. Over the course of the scheme, which began no later than 2014 and continued at least through 2021, the 4M Pharmacies were paid over $160 million for topical creams and Omega-3 pills from Medicare drug plans alone.

On September 16, 2024, the parties submitted their joint jury instructions, which were divided into instructions on which they agreed and instructions on which they disagreed. (Docket Entry No. 270 at 23). Among those instructions, the parties agreed that this Court should use Fifth Circuit Pattern Jury Instruction 1.40 (2024) to instruct the jury regarding the materiality element of the fraud offenses. That instruction provides as follows:

> As used in these instructions, a representation, statement, pretense, promise is 'material' if it has a natural tendency to influence, or is capable of influencing, the decision of the person or entity to which it is addressed. The Government can prove materiality in either of two ways. First, a representation, statement, pretense, promise is 'material' if a reasonable person would attach importance to its existence or nonexistence in determining his choice of action in the transaction in question. Second, a statement could be material, even though only an unreasonable person would rely on it, if the person who made the statement knew or had reason to know his victim was likely to rely on it.
>
> In determining materiality, you should consider that naiveté, carelessness, negligence, or stupidity of a victim does not excuse criminal conduct, if any, on the part of the defendant.

*Id*.

On October 10, 2024, in the middle of trial, Defendant reversed course regarding the previously agreed-upon materiality instruction. (Docket Entry No. 303). He asked this Court to discard the Fifth Circuit pattern jury instruction and instead use the following two instructions regarding materiality:

> A misrepresentation is 'material' for purposes of Counts 1 through 7 if it goes to the very essence of the bargain between the 4M pharmacy and the pharmacy benefit manager or other person or entity with which the 4M pharmacy contracted.
>
> A misrepresentation does not constitute fraud if the misrepresentation does not go to the nature of the bargain between the defendant and the alleged victim. A misrepresentation will go to the nature of the bargain if it goes to price or quality, or otherwise to essential aspects of the transaction.

*Id*.

In his briefing and argument urging this Court to discard the 2024 pattern jury instruction in favor of his proposed instruction, Defendant cited portions of briefs filed by the United States Solicitor General before the Supreme Court in *Ciminelli* v. *United States,* 598 U.S. 306 (2023), and *Kousisis* v. *United States*, No. 23-909. Following briefing from the parties and a charge conference during which Defendant's counsel argued that aspects of the United States' opposition to his request regarding the materiality instruction contravened the position of the Solicitor General in its briefing in *Ciminelli* and *Kousisis*, this Court denied Defendant's request to abandon the pattern instruction in favor of his proposed instructions. In doing so, this Court held that it would instruct the jury using Fifth Circuit Pattern Jury Instruction 1.40 (2024) because the materiality definition there was consistent with the Fifth Circuit law and consistent with the evidence in this case. The jury subsequently found Defendant guilty on all counts.

**II.     Supreme Court proceedings in *Kousisis* v. *United States*, No. 23-909**

While Defendant's prosecution was pending in this Court, briefing was also underway before the Supreme Court in *Kousisis* v. *United States*, No. 23-909, in which the question presented

is whether convictions for wire fraud, in violation of 18 U.S.C. § 1343, and conspiring to commit wire fraud, in violation of 18 U.S.C. §§ 1343 and 1349, require proof of net pecuniary loss. *Kousisis* v. *United States*, 2024 WL 4405280, at *I (Brief for the United States). Kousisis was convicted of those offenses for fraudulently causing a state agency to pay his company millions of dollars under painting-and-repair contracts by lying about compliance with a disadvantaged-business-enterprise (DBE) program that was an essential condition of the contracts. *Id.* at *3.

Kousisis argued that his conduct did not violate the federal wire-fraud statute because, he claimed, the state agency had not suffered a net pecuniary loss since he had performed the promised work under the contract, despite the fact that he had lied about compliance with the contract's DBE requirements to obtain the contract in the first place and had engaged in an elaborate scheme to falsify compliance. *See id.* at *5-6, *9-10. Under Kousisis's theory, the agency had not sustained an injury to a traditional property interest because he performed the painting and repairs for which he had been contracted, notwithstanding the fact that he had fraudulently induced the agency to enter into the contract. *See id.* at *9-10.

The United States responded that Kousisis's crime—tricking a victim into handing over money by lying about an essential aspect of what he would provide in return (namely, compliance with the DBE requirements)—was classic property fraud which is prohibited by the federal wire-fraud statute. *Id.* at *8-9. The United States noted that the Supreme Court had long recognized that the federal mail- and wire-fraud statutes encompass schemes to fraudulently induce a transaction and had expressly rejected the contention that those statutes require "monetary loss." *See, e.g., Carpenter* v. *United States*, 484 U.S. 19, 26 (1987). *Id.* at *10.

Responding to a litany of purported adverse consequences that Kousisis argued would result from rejecting his net-pecuniary-loss theory, the United States noted that Kousisis's "own

4

parade of horribles . . . disregards the demanding and rigorous materiality standard in this context." *Id.* at *12. The United States explained that the materiality standard "precludes liability for misrepresentations that do not go to the essence of the bargain" between contracting parties, which the United States described as a standard "that many strands of law have applied" in such contexts. *Id.* The United States further argued that Kousisis's fraudulent misrepresentations about complying with the contract's DBE requirements satisfied the materiality element of wire fraud because they "went to the very essence of the bargain" between Kousisis and the state-agency victim of the fraud. *Id.* at *17-18.

In his reply brief, Kousisis asserted that "the 'essence of the bargain' test is not the standard for materiality that applies" to the federal mail- and wire-fraud statutes. *Kousisis* v. *United States*, 2024 WL 4712801, at *18 (Reply Brief of Petitioners). He alternatively argued that a misrepresentation would only go to "essence" of a bargain if it would "destroy the value" of the entire bargain. *Id.* In connection with this argument, Kousisis included a footnote stating the following:

> The difficulty of satisfying the 'essence of the bargain' test . . . is presumably why line prosecutors continue to resist the test even when made aware of the Solicitor General's briefs in *Ciminelli* and this case.

*Id.* at *23 n.4. In that footnote, Kousisis cited the United States' opposition here to Defendant's request to discard the Fifth Circuit pattern jury instruction on materiality and to replace it with Defendant's own instructions. *Id.*

The Supreme Court held oral argument in *Kousisis* on December 9, 2024.[1] The majority of the argument focused on the parties' core dispute, namely whether the federal mail- and wire-fraud statues apply only where a victim suffers a net economic loss (as Kousisis argued), or whether

---

[1] A transcript of the *Kousisis* oral argument is submitted with this memorandum.

those statutes apply to transactions that are fraudulently induced by means of material misrepresentations, regardless of whether the victim suffers a net economic loss (as the United States argued). Oral Arg. Tr. at 1-101.

The argument, however, also briefly touched upon the essence-of-the-bargain articulation of materiality and the footnote in Kousisis's reply brief regarding the jury instruction in this case. Two portions of the transcript are relevant here. First, Justice Kavanaugh inquired of the United States as to the "guidance" provided by the essence-of-the-bargain formulation:

> JUSTICE KAVANAUGH: Right. And then on materiality, which you emphasize as … being a critical limit here, what's the -- what should the jury instruction look like there? What is the standard jury instruction there? Because you refer to "essence of the bargain," which I think is probably not giving a huge amount of guidance. So?
>
> MR. FEIGIN: So, Your Honor, I don't think there's a one-size-fits-all approach to this, and let me just get the difficult part out first.
>
> They've identified a couple of instances in their brief where the government opposed an essence-of-the-bargain instruction. The government should not be doing that. And we had filed a corrective letter in one case, and the other case is post-verdict and we intend to confess error in that case as well.[2]
>
> So essence -- I think in footnote 5 of *Universal Health Services* [v. *United States*, 579 U.S. 176, 193 n.5 (2016)], the Court offers just a number of different formulations, some of which might be useful in certain cases, some of which might not. I don't think it's error just to use the standard materiality instruction because, of course, that's what *Universal Health Services* is interpreting.
>
> But something like "essence of the bargain," or what was done in this case, … "fundamental basis of the bargain." That might be another way to put it.
>
> I think what's important is that the jury gets the idea of -- of the actual materiality standard. Like that really the government -- if it's not something to which a reasonable person would attach importance, like the size of the paper . . . then we're not going to be able to satisfy that. And then I think you're really going to have to show, and the burden's always on us to show, this is even beyond Universal Health Services, which is --brings this up in a civil context.

---

[2] *Mokbel* is the post-verdict case referenced by Deputy Solicitor General Feigin. The case in which a "corrective letter" was filed is *United States* v. *Miller* (23-3194), currently pending before the Ninth Circuit. A copy of the letter filed in *Miller* is attached.

> JUSTICE KAVANAUGH: I think the concern, or one concern --and I don't think there's a great solution to this, but I'll just throw it out there --is that obviously it's pretty vague and different juries are going to have very different reactions to something like "essence of the bargain." But I don't know that there's a great solution to that. That's why I was asking the question about how it's spelled out.
>
> MR. FEIGIN: So, Your Honor, I think this --I think courts have a lot experience crafting proper jury instructions. This is exactly what they have to do under Universal Health Services. Unlike Universal Health Services, we have to prove this beyond a reasonable doubt, and I think any kind of reasonable explanation.
>
> And, again, this has been the law for a long time, a long time, so there's a lot of experience with this. But I think any explanation that the court comes up with that's a reasonable explanation of the concept of this has to be something that was really important[.]

*Id.* at 77-79. Second, Justice Barrett asked the United States whether the essence-of-the-bargain formulation was a heightened form of materiality or simply a context-specific restatement of the traditional standard:

> JUSTICE BARRETT: Mr. Feigin, do you understand -- I just want to be sure that I have the nub of your argument on essence of the bargain. Do you understand that to be ratcheted up for materiality or a synonym for materiality?
>
> MR. FEIGIN: I understand it to be a way of expressing materiality that is useful in the contracting context, Your Honor. And what it expresses is this idea that it has to be a but-for reason why the contract was entered into[.]

*Id.* at 81.

### III. Consistent with the argument in *Kousisis,* the United States concedes that it erred in a portion of its argument in opposition to Defendant's proposed materiality instruction.

Consistent with the oral argument in *Kousisis*, and after consultation among this Office, the Office of the Solicitor General, and the Appellate Section of the Department of Justice Criminal Division, the United States concedes that it erred in a portion of its argument opposing Defendant's requested materiality instruction. Specifically, in one of its filings opposing Defendant's requested instruction, the United States argued that, in its briefs to the Supreme Court in *Ciminelli* and *Kousisis*, the United States had not endorsed the "essence of the bargain" as an appropriate

7

formulation of the materiality inquiry in contracting-fraud cases, but rather had only cited the "essence of the bargain" phrasing of materiality as an "articulation[ ] of the standard from a civil False Claims Act case and a 1931 New York State case." (Docket Entry No. 310 at 6).[3] That argument was error.

As stated during oral argument in *Kousisis*, it is the position of the United States that, while there is not a "one-size-fits-all approach" to instructing juries regarding the definition of materiality, "something like 'essence of the bargain,' or . . . 'fundamental basis of the bargain'" are among the ways that a court might give a jury a "reasonable explanation of the concept" of materiality "in the contracting context." Accordingly, as set forth in the briefing from the Office of the Solicitor General in *Ciminelli* and *Kousisis*, the United States generally acknowledges the propriety of an "essence of the bargain" formulation as correctly stating the materiality element of the federal mail- and wire-fraud statutes when applied in contracting-fraud prosecutions.

**IV.     Notwithstanding the prior erroneous argument of the United States, this Court properly denied Defendant's request to wholly discard the Fifth Circuit pattern jury instruction on materiality and replace it with his proposed instructions.**

A district court's jury instructions must constitute a "correct statement of the law" that "clearly instructs jurors as to the principles of the law applicable to the factual issues confronting them." *United States* v. *Diaz*, 941 F.3d 729, 741 (5th Cir. 2019) (internal quotation omitted) (citing *United States* v. *Martinez*, 921 F.3d 452, 477 (5th Cir. 2019)). Under that standard, this Court properly rejected Defendant's request to replace the Fifth Circuit pattern instruction on materiality with his proposed instruction.

---

[3] The United States filed two documents in response to Defendant's mid-trial request to replace the Fifth Circuit pattern instruction on materiality with his proposed instructions: (1) Opposition to Defendant's Proposed Supplemental Jury Instructions (Docket Entry No. 305); and (2) Reply Concerning Fraud Jury Instruction (Docket Entry No. 310), filed in response to Defendant's Memorandum Concerning Fraud Instructions (Docket Entry No. 306).

Defendant's proposed materiality instruction was phrased *solely* in terms of misrepresentations going to the "essence of the bargain between the 4M pharmacy and the pharmacy benefit manager or other person or entity with which the 4M pharmacy contracted." (Docket Entry No. 303). Defendant's fraud scheme, however, did not solely involve misrepresentations to entities with whom he contracted. Indeed, many of the core misrepresentations in the scheme were made to parties with whom Defendant had no contractual relationship, such as the myriad misrepresentations made to various prescribers to trick them into signing prescriptions. Defendant's proposed jury instruction offered the jury no guidance, let alone clear instruction about how to assess the "factual issues confronting them" regarding such misrepresentations to prescribers. The Fifth Circuit pattern instruction, by contrast, provided a materiality standard broad enough to assist the jury regarding all the types of misrepresentations in Defendant's scheme, regardless of whether the misrepresentations were made to prescribers, patients, or pharmacy benefit managers. In short, while a properly tailored jury instruction involving the essence-of-the-bargain articulation of materiality could have been appropriate to address certain of the misrepresentations in this case, this Court properly rejected Defendant's attempt to *only* instruct the jury regarding that formulation of materiality and to eschew the Fifth Circuit pattern instruction's more broadly applicable explanation of materiality which was necessary for the jury to weigh properly the evidence before it.

Defendant's attempt to instruct that "[a] misrepresentation does not constitute fraud if the misrepresentation does not go to the nature of the bargain between the defendant and the alleged victim" and that "[a] misrepresentation will go to the nature of the bargain if it goes to price or quality, or otherwise to essential aspects of the transaction" were also properly rejected. Those instructions failed to "clearly instruct[ ] jurors as to the principles of the law applicable to the

factual issues confronting them" in this case where Defendant's fraud did not involve the price or quality of the drugs he sold, but rather involved defrauding Medicare, Medicaid, and other insurers by billing for prescriptions that were medically unnecessary, based on illegally purchased Medicare identifiers and/or kickbacks, based on false representations to prescribers, patients, and/or pharmacy benefit managers, and/or where copayments were not properly collected. Indeed, Defendant's proposed instruction presented a substantial risk of confusing the jury with its references to price and quality, which had nothing to do with the factual issues presented by the evidence at trial.

Finally, this Court properly denied Defendant's request to strike the Fifth Circuit pattern instruction in favor of his proposed instruction because doing so would have deprived the jury of guidance about how to assess one of the factual issues repeatedly emphasized by Defendant's defense at trial, namely, how to weigh the care (or lack of care) exercised by the various prescribers before signing the prescriptions Defendant submitted to them. The Fifth Circuit pattern instruction gave the jury clear guidance, instructing the jury that, "[i]n determining materiality, you should consider that naiveté, carelessness, negligence, or stupidity of a victim does not excuse criminal conduct, if any, on the part of the defendant." Defendant's proposed substitute instruction was silent on the matter and would have deprived the jury of the clear and useful instruction needed and provided by the pattern instruction.

In sum, this Court properly instructed the jury regarding materiality using the Fifth Circuit pattern instruction. Defendant's proposed substitute was inappropriate, not because it referred to the concept of "essence of the bargain," but because the jury couldn't usefully apply its exclusively contract-centric articulation of materiality to all the types of misrepresentations in Defendant's scheme, many of which involved no contractual relationship. Additionally, Defendant's requested

instruction would have injected unnecessary confusion by referring to matters not at issue in this case (including the price and quality of drugs that Defendant provided) and would have deprived the jury of necessary instructions regarding the factual issues actually presented (like the care or carelessness of prescribers). Under these circumstances, this Court properly denied Defendant's request to strike the Fifth Circuit pattern instruction in favor of his proposed instructions.

Date:  January 29, 2025                    Respectfully submitted,

                                                NICHOLAS J. GANJEI
                                                United States Attorney
                                                Southern District of Texas

By:    *s/ Adam Laurence Goldman*
        Adam Laurence Goldman
        Assistant United States Attorney
        Attorney-in-Charge
        S.D. Tex. ID No.: 1034195
        State Bar Nos.:  NY3038023/DC476521
        1000 Louisiana Street, 27th Floor
        Houston, Texas 77002
        Tel.: (713) 567-9534; FAX: (713) 718-3303
        E-mail:  Adam.Goldman2@usdoj.gov
        *Counsel for the United States of America*

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on this 29th day of January, 2025, I electronically filed this document with the Clerk of Court using CM/ECF, to which opposing counsels are members:

                                                *s/ Adam Laurence Goldman*
                                                Adam Laurence Goldman
                                                Assistant United States Attorney