UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA | § |
| | § |
| v. | § CRIMINAL NO. 4:21-cr-103 |
| | § |
| MOHAMED M. MOKBEL | § |

**UNITED STATES' REPLY TO DEFENDANT MOKBEL'S RESPONSE TO GOVERNMENT'S POST-TRIAL MEMORANDUM**

"[R]equests to the Court must be made by motion, not in a response brief." *Acute Care Ambulance Service, L.L.C., v. Azar,* No. 7:20-cv-217, 2020 WL 7640206, at *15 (S.D. Tex. Dec. 3, 2020).

On January 29, 2025, the United States filed a memorandum advising the Court of oral argument before the Supreme Court and confessed error in an argument made during trial. (Docket Entry No. 356). On February 7, 2025, Mokbel filed a response to this memorandum claiming Mokbel "requires a new trial" on several counts. (Docket Entry No. 358). Mokbel's request in a response, *which is not a motion*,[1] for a new trial should be stricken and/or denied on the merits because it fails to cite the applicable rule or legal standard, is untimely, and any potential errors at the trial were nevertheless harmless and do not warrant a new trial.

**I.     FACTUAL BACKGROUND**

On October 15, 2024, Defendant Mokbel was convicted by a jury following a ten-day trial of health care fraud and mail fraud conspiracy, in violation of 18 U.S.C. §1349; five counts of

---

[1] Fed. R. Crim. P. 33(b) explicitly states that an "[a]pplication for a new trial shall be made by *motion*" (emphasis added).

health care fraud, in violation of 18 U.S.C. §1347; conspiracy to defraud the United States and to buy, sell and distribute Medicare Beneficiary Identification Numbers ("BINs") and to pay health care kickbacks, in violation of 18 U.S.C. §371; five counts of engaging in monetary transactions in property derived from specified unlawful, in violation of 18 U.S.C. §1957; conspiracy to commit bribery concerning programs receiving federal funds, in violation of 18 U.S.C. §371; and bribery concerning programs receiving federal funds, in violation of 18 U.S.C. §666(a)(2). Mokbel was the operator of 14 pharmacies that defrauded Medicare, Medicaid, and private insurance, paid kickbacks for patient referrals and Medicare BINs, and bribed an employee of a Pharmacy Benefits Manager ("PBM") to maintain his pharmacies' access to their network of insurance plans. The evidence of Mokbel's guilt was overwhelming: twenty-seven witnesses testified for the Government, including two other participants in Mokbel's crimes (Eugene Young and Gregory Rispler); seven employees of Mokbel's management company (Parris Rhodes, Dane Federbush, Sam Saleh, Sonia Trevino, Amanda Baetz-Jacobi, Matthew Reeves, and Cindy Hanson); three pharmacists who worked at Mokbel's pharmacies (Obi Akoh-Arrey, Augusta Anosike, and Jake Li); four physicians who received prescriptions from Mokbel's pharmacies (Dr. Sue Donahue, Dr. Viola Anderson, Dr. Antoinette Abou-Haider, and Dr. Avi Marocco), three pharmacy benefits manager representatives, a Medicare representative, and three summary witnesses to summarize voluminous financial records, Medicare claims data, and records obtained through search warrants and grand jury subpoenas.

The United States also introduced at trial the emails between Rispler and Mokbel demonstrating how Mokbel illegally purchased thousands of patients' personal health information; Mokbel's emails and text messages about running "test claims" with this personal data to see what medications had high profit margins; the misleading fax requests sent to doctors; recorded phone

calls with patients misleading them about the medications, the co-pays, and how their prescription was obtained; the contracts with the PBMs disguising Mokbel's involvement and the pharmacy type; the excessive claims to Medicare for just a few high paying medications and lack of diabetic supplies from a diabetic supply company; and the financial analysis showing Mokbel's personal profit from the scheme.

## II. ARGUMENT

### a. Mokbel's "motion" is legally insufficient and should be stricken

Federal Rule of Criminal Procedure 33 permits a court to vacate a judgment and grant a new trial "if the interest of justice so requires." *United States v. Wright*, 634 F.3d 770, 775 (5th Cir. 2011). The Fifth Circuit has generally held that a trial court should not grant a motion for new trial "'unless there would be a miscarriage of justice or the weight of evidence preponderates against the verdict.'" *Id.* (quoting *United States v. Wall*, 389 F.3d 457, 466 (5th Cir. 2004)). "'A new trial is granted only upon demonstration of adverse effects on substantial rights of a defendant.'" *Id.* (quoting *Wall*, 389 F.3d at 466). The Fifth Circuit has cautioned district courts to exercise their discretion to grant a new trial only in exceptional circumstances. *See United States v. Scroggins*, 485 F.3d 824, 831 (5th Cir. 2007).

Mokbel failed to file a motion, much less cite the Rule 33 or the legal standard to apply. Mokbel's response should be stricken as it does not meet the bare minimum standards of motion practice or Criminal Local Rule 12.2.

### b. Mokbel's "motion" is untimely

Motions for new trial, "grounded on any reason other than newly discovered evidence must be filed within 14 days after the verdict or finding of guilty." Fed. R. Crim. P. 33(b)(2). Mokbel's request for a new trial is more than three months late. Under Rule 45, a court may extend that time

"for good cause . . . on a party's motion" or excuse untimeliness "after the time expires if the party failed to act because of excusable neglect." Fed. R. Crim P. 45(b)(1).

Although the standard for excusable neglect involves multiple factors, "the excuse given for the late filing must have the greatest import. While [the others] might have more relevance in a closer case, the reason-for-delay factor will always be critical to the inquiry." *Lowry v. McDonnell Douglas Corp.*, 211 F.3d 457, 463 (8th Cir.2000); *see also United States v. Cates*, 716 F.3d 445, 448–49 (7th Cir. 2013) (the "factor that weigh[s] most heavily in the district court's determination was the reason—or lack thereof—for [a defendant's] delay in requesting the extension."); *United States v. Chujoy*, 207 F. Supp. 3d 660, 665–66 (W.D. Va. 2016) ("The all-important third factor is more problematic . . . . [E]xcusable neglect is not an end-run around the federal rules, and defense counsel's explanation for the error rings hollow in light of the six-month filing delay"). Mokbel has not pointed to any reason for delay.

To the contrary, Mokbel makes the same arguments that he made in support of his jury instructions during trial. Mokbel block quoted his motion requesting the "essence of the bargain" instruction" filed on October 10, 2024. (Docket Entry No. 303). The Court also heard those arguments during the charge conference on October 14, 2024. The Court denied Mokbel's instruction and used the 2024 Fifth Circuit Pattern Jury Instruction for materiality. Mokbel's request for a new trial should be denied as untimely.

To the extent that Mokbel alleges that he was waiting for the United States to file a document regarding the Supreme Court oral argument in *Kousisis* v. *United States*, No. 23-909, such a claim is of no moment. Instead, Mokbel, upon becoming aware of the oral argument almost immediately, could have notified the Court and sought relief. Moreover, to believe that the statement at the *Kousisis* oral argument would lead to a request to set aside the verdict by the

4

United States is unserious as the statement referred to this case as similar to that in *United States v. Miller* (9th Cir. 23-3194), before the Ninth Circuit. In *Miller,* although a similar error was confessed, the United States maintained (and still maintains) that the verdict should be undisturbed.

**c. The Court did not err and a new trial is not warranted**

As detailed in the Government's Memorandum (Docket Entry No. 356), this Court properly instructed the jury regarding materiality using the pattern instruction adopted by the Fifth Circuit Committee on Pattern Jury Instructions in 2024. Mokbel's proposed substitute instruction was inappropriate because the jury couldn't usefully apply its exclusively contract-centric articulation of materiality to all the types of misrepresentations in Mokbel's scheme, many of which involved no contractual relationship. Under these circumstances, this Court properly denied Mokbel's request to strike the Fifth Circuit pattern instruction in favor of his proposed instructions.

Mokbel's request for a new trial is without merit. The evidence of Mokbel's health care fraud and mail fraud scheme was overwhelming, such that the weight of evidence preponderates in favor of the verdict and the remote possibility of error is harmless.

The Court should analyze the materiality jury instruction issue under plain-error review. Although Rule 52 "is relied on primarily by appellate courts, . . . the standard it sets out are controlling when a trial court is passing on a post-trial motion." 3B Wright & Miller, *Fed. Prac. & Proc.* § 851 (4th ed.); *see, e.g. United States v. Jasso*, 568 F. Supp. 3d 742, 753 (S.D. Tex. 2021), *aff'd,* No. 21-40790, 2023 WL 1879405 (5th Cir. Feb. 10, 2023) (trial court applying plain error review to unpreserved evidentiary issue on a motion for new trial). "To demonstrate plain error, the defendant must show that there was error, it was plain, and it affected his or her substantial rights." *United States v. Ahmed*, 794 F. App'x 362, 366 (5th Cir. 2019) (per curiam) (quoting *United States v. Alaniz*, 726 F.3d 586, 615 (5th Cir. 2013)). Substantial rights are affected

"if the defendant 'shows a reasonable probability that, but for the error, the outcome of the proceeding would have been different.'" *Id.* (quoting *Molina-Martinez v. United States*, 578 U.S. 189, 194 (2016)) (cleaned up).

Mokbel has not shown that but for the error, he would have been acquitted. The jury's verdict would have been the same even if the final jury instruction used the "essence of the bargain" language. The final jury instruction used very similar language: "[a] representation is 'material' if it has a natural tendency to influence, or is capable of influencing, the decision of the person or entity to which it is addressed." (Docket Entry No. 317 at 10). At trial, Mokbel's defense was largely that he lacked the specific intent to defraud Medicare. Mokbel argued that his misrepresentations to the PBMs were due to his animosity for the PBMs' unfair treatment of independent pharmacies, not because he had the specific intent to defraud Medicare, Medicaid, and private insurance plans. *See* Docket Entry No. 256 at 4 (Mokbel sought to introduce congressional reports regarding the PBMs to "corroborate a key element of the defense: that he viewed the PBMs as competitors trying to destroy his business.")

As to the misrepresentations to doctors and patients, Mokbel largely argued that these statements were not misrepresentations, they did not actually reach the physicians (as in they were only on the fax cover sheet) or that Mokbel was trying to prevent the misrepresentations to the patients by rogue employees. Mokbel argued that he was operating a good faith diabetic supply company, that diabetic patients needed the medications, and he was simply following the doctors' orders by fulling the prescriptions. Finally, Mokbel argued that the illegally purchased information were simply "sales leads" and Rispler has obtained consent to contact the patients' physician and bill their insurance plans. The materiality of the misrepresentations to patients, doctors, PBMs, and ultimately Medicare, Medicaid, and private insurance plans was not significantly in dispute at trial.

Ultimately, the jurors clearly disagreed with Mokbel's defenses and found the defendant guilty after only a few hours of deliberation.

### III.  CONCLUSION

For the reasons stated here, the United States respectfully requests that the Court deny Mokbel's unsupported and untimely request for a new trial.

        Respectfully submitted,

        NICHOLAS J. GANJEI
        UNITED STATES ATTORNEY

By:    */s/ Kathryn Olson*
        Kathryn Olson
        Adam Goldman
        Assistant United States Attorneys
        United States Attorney's Office
        1000 Louisiana Street, Suite 2300
        Houston, Texas 77002
        Kathryn.Olson@usdoj.gov

### CERTIFICATE OF SERVICE

I hereby certify that, on February 14, 2025, I electronically filed the foregoing document onto the Court's CM/ECF system.

        */s/ Kathryn Olson*
        Kathryn Olson